UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DOUGLAS MOMAN,

               Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

             Defendant.

CASE NO.    C08-5148RBL

REPORT AND
RECOMMENDATION

Noted for January 23, 2008

     This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. §
636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, secretary of H.E.W.
v. Weber, 423 U.S. 261 (1976). This matter has been fully briefed, and the undersigned now submits the
following report, recommending that the Court affirm the Administration's final decision.

<u>FACTUAL AND PROCEDURAL BACKGROUND</u>

     Plaintiff, Douglas Moman, was born in 1954. Plaintiff's education consists of a GED, after
leaving high school in the 11th grade. He has also received some training at a vocational school in the
latter half of 2001. Tr. 99. Plaintiff has past relevant work experience as a plastics worker supervisor.
Tr. 28. He worked in the plastics manufacturing industry for approximately ten (10) years, from 1982
until 1992. In his application for benefits Plaintiff states he is unable to work due to "nerve damage in
neck and left arm and shoulder, diabetes, high blood pressure, equilibrium problems." Tr. 93.

     Plaintiff claims his physical problems started in 1980 when he was riding a bicycle and was hit by
a drunk driver. Tr.520. His most serious injury was a tear of the brachial plexus nerve that controls the

left arm that left him with very limited use of the left arm. *Id.* On November 11, 2006, Dr. Rao

examined Plaintiff, and he summarized his medical history as follows:

> As a result of his shoulder dysfunction [injury due to the bicycle incident in 1980] he is unable to do overhead lifting activities and reaching. Based on his current level of function he has not had any recent evaluation or physical therapy to his left shoulder. He states that he has a very difficult time using the arm at all. It seems always to be stiff, somewhat painful, and limited in terms of functional capacity. He also reports somewhat decreased grip strength in his left hand an inability to do any prolonged periods of lifting, by self report.
>
> He was last employed in 1992-1993 as an Arab-based plant supervisor. He has not had stable employment since this time and has been recently discharged from jail approximately three years ago for a domestic violence dispute.
>
> He also reports a history of neck injury. He reports some form of alantoaxial injury, but never had it worked up. He primarily complained previously of cracking in his neck that resolved over time. He denies any loss of consciousness or further traumas to his neck other than the initial motor vehicle accident in 1980.
>
> The claimant also reports a history of diabetes. His last hemoglobin AlC in 2003 demonstrated a level of 6.5%. He had previously been on glyburide for diabetes, but has not been on any medications for over one year. He was told that he was taken off medications because his blood sugars had normalized. He is not fully trusting of this. He checks his blood sugars on occasion and they run from 100-200 mg/dl depending on when he checks.
>
> The claimant reports that he has not been evaluated for diabetic neuropathy, nephropathy, or retinopathy recently. He remembers some evaluation to this effect in jail.
>
> The claimant also reportedly has a history of hypertension for which he has taken lisinopril in the past and hypercholesterolemia for which he has taken gemfibrozil. He is currently not on any medications for either hypertension or hyperlipidemia. Chart documentation and review revealed a history of low HDL cholesterol and a history of hypertriglyceridemia.
>
> The claimant also reports a history of ongoing depression without suicidal ideation. He reports that he has essentially lived a tough life and was previously seen by mental health counselor and he felt that this did not provide him enough benefit. He has also tried Prozac in the past, but reports that he had significant exacerbation of fatigue as a result of this. He has not seen any mental health providers in over a year other than an evacuation through a psychiatrist as part of this screening examination.

Tr. 347-48.

In June 2003, Plaintiff filed concurrent applications for disability insurance benefits under Title II

of the Social Security Act (Act), 42 U.S.C. §§ 401-34, and Supplemental Security Income (SSI) disability

benefits under Title XVI of the Act, 42 U.S.C. §§ 1381-83f. Tr. 81-83. In his application, Plaintiff

alleged disability since July 7, 1980. Tr. 93.

The Commissioner denied his applications initially and on reconsideration. Tr. 35-37, 40-44.

Plaintiff amended his onset date to January 1, 1993. Tr. 17, 549. On July 3, 2007, following two hearings, the administrative law judge ("ALJ") issued a partially favorable decision finding Plaintiff disabled, but only since April 12, 2004. Tr. 13-30. Because of the onset date of April 12, 2004, established by the ALJ, Mr. Moman was found only eligible for SSI benefits. In order to qualify for Social Security Disability Insured benefits (Title II), Mr. Moman would have had to be found disabled prior to his date last insured which was December 31, 1997 (Tr. 85). Consequently, Plaintiff requested further administrative review of the ALJ's decision. On February 22, 2008, the Appeals Council denied Plaintiff's request for review. Tr. 7-10. The Appeals Council's denial of review made the ALJ's decision the Commissioner's final decision.

Plaintiff now brings the matter to the attention of the federal court pursuant to 205(g) of the Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of the ALJ's decision. He specifically challenges the administrative -- the ALJ's – decision on the following five basis:

(1) the ALJ's decision that Mr. Moman was not disabled before April 12, 2004 is not supported by substantial evidence;

(2) the ALJ failed to properly consider the regulations concerning the use of medical testimony to establish the onset of disability;

(3) the ALJ erred in his residual functional capacity ("RFC") analysis by misstating the physical functioning abilities of the claimant;

(4) the ALJ failed to account for all of the claimant's limitations in the hypothetical question posed to the vocational expert; and

(5) the ALJ failed to follow the regulations concerning the effects of drug and alcohol use on the claimant's disability.

Plaintiff's Opening Brief at 7-8. Each of these issues is addressed below.

<u>DISCUSSION</u>

The Court must uphold the Secretary's decision if the ALJ applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257 (9th Cir. 1992); <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Fife v. Heckler</u>, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); <u>Carr v. Sullivan</u>, 772 F. Supp. 522, 525 (E.D. Wash. 1991). If the evidence admits of

more than one rational interpretation, the Court must uphold the Secretary's decision. <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984).

## A. THE ALJ PROPERLY DETERMINED PLAINTIFF'S ONSET DATE OF DISABILITY

Plaintiff argues the critical issues in this case is what date Mr. Moman became disabled. This is of significance to him because his date last insured was December 31, 1997, and in order to be eligible for disability insurance benefits (Title II)(20 C.F.R. §§ 404.1520), he must prove that he was disabled before this date. The claimant bears the burden of proof at steps one through four. <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005). As noted above, the ALJ found Plaintiff disabled, but only since April 12, 2004.

The ALJ's finding is properly supported by substantial evidence. The Social Security Administration's policy for establishing the onset date of disability is set forth in SSR 83-20, available at 1983 WL 31249. Regarding the onset of disabilities of nontraumatic origin, such as that alleged by Plaintiff in the present case, the ruling directs the ALJ to consider three factors. Those factors are: (1) the allegations of the claimant, (2) the claimant's work history, and (3) the medical and other evidence. SSR 83-20. Consideration of the medical evidence of record, however, is paramount in establishing onset of disability. SSR 83-20 ("the medical evidence serves as the primary element in the onset determination."). The ruling states that "the individual's allegation or the date of work stoppage is significant in determining onset only if it is consistent with the severity of the condition(s) shown by the medical evidence." SSR 83-20. The ruling further states that "the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record." SSR 83-20.

The ALJ based his decision on the medical record, (more fully discussed below). Significantly, on April 12, 2004, Plaintiff underwent a psychological evaluation performed by, Deborah Kabisch, ARNP. Tr. 247-250. Plaintiff reported that he had a history of depression and anxiety and he stated that it has "been going on since my brother died when I was in prison." Tr. 247. He reported that for the past few years he had been in prison for domestic violence and his probation had been revoked twice since his release from jail in July 2003 due to violation of no contact orders. Tr. 249. Plaintiff reported he used illegal drugs on a daily basis for about 37 years. Tr. 248. At the time he was in a court ordered chemical dependency treatment program. Tr. 248. He admitted that he relapsed the prior month but was clean and

1   sober for the past two weeks. Tr. 249. ARNP Kabisch diagnosed major depression, panic disorder with

2   agoraphobia, and polysubstance abuse in early remission. She recommended continued

3   counseling/therapy and a trial of Prozac. Tr. 249. As further discussed below the medical evidence was

4   properly weighed by the ALJ and he found no basis to find Plaintiff disabled prior to opinion of ARNP

5   Kabisch dated April 12, 2004.

6   ### B. THE ALJ PROPERLY EVALUATED AND WEIGHED THE MEDICAL OPINION EVIDENCE

7   If a treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject

8   this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the

9   record for doing so. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). "The opinion of a

10   nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the

11   opinion of either an examining physician or a treating physician." Lester v. Chater, 81 F.3d 821, 831

12   (9th Cir. 1996). In Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989), the Ninth Circuit upheld

13   the ALJ's rejection of a treating physician's opinion because the ALJ relied not only on a nonexamining

14   physician's testimony, but in addition, the ALJ relied on laboratory test results, contrary reports from

15   examining physicians and on testimony from the claimant that conflicted with the treating physician's

16   opinion.

17   Here, plaintiff contends the ALJ failed to properly consider or give proper weight to the opinions

18   of Dr. Quint, Dr. Haines, and Dr. Richard Johnson. A review of the records shows the ALJ relied on

19   several different medical sources to formulate his conclusions. In addition to the opinion of ARNP

20   Kabisch as discussed above, the ALJ relied on medical evidence supplied by the Kent Jail Health

21   Services, Dr. Wu, Dr. Fogel, Dr. Coolidge (a DDS physical capacity examiner), Dr. Ramos, Dr. Callao (a

22   DDS mental health examiner), and Dr. Benjamin Johnson. The ALJ wrote:

23     The overall medical evidence of record does not support the claimant's allegations of
debilitating symptoms or limitations prior to April 12, 2004 (Social Security Rulings 96-3p

24     and 96-4p). His subjective pain complaints and allegations regarding his capability to
perform activities of daily living and work-related activities are out of proportion to any

25     physical findings and without clinical or laboratory findings. Despite his reports of
relatively serious problems prior to April 12, 2004, treating and examining physicians

26     found no or only mild objective findings and observed no major difficulties with
functioning during the examinations. His arm complaints do not seem to be as severe as he

27     alleges considering his range of motion (Exhibits 2F, p.3 and 9F, p. 6). Prior to April 12,
2004, he did not receive the type or extent of medical treatment one would expect for a

28     totally disabled individual with "constant" debilitating symptoms. There are also
significant gaps in his treatment history. Although he alleges an onset date of January 1,

1993, the records only date back to July 2000 (Exhibit 1F).  This lack of treatment in this case suggests that the claimant's symptoms since the alleged onset date have not always been as serious as he has alleged in connection with this application and appeal.

Prior to April 12, 2004, the claimant's treatment was routine and/or conservative in nature and the records reveal that this treatment has been generally successful in controlling her objective symptoms.  He rarely took his medications for diabetes and hypertension (Exhibits 4F, 7F, 15F, pp. 19-22, and 21F).  Yet the medical records reveal that the medications were relatively effective in controlling his symptoms *when he took them.*  He did not take any medications for psychiatric symptoms until he was prescribed a trial of Prozac in April 2004 (Exhibit 15F, pp. 19-22).  His arm complaints existed from the alleged onset date, but there is no evidence other than the claimant's testimony that he had mental problems until after his release from prison.  In fact in October 2003 the claimant denied psychological symptoms except for "some trouble sleeping" and "some problems with thinking and concentrating" (Exhibit 22F, p. 51).  He did not seek mental health treatment until February 2004 (Exhibits 15F, pp. 23-32 and 17F, pp. 3-4).

Tr. 24-25.  The ALJ further explained:

In determining residual functional capacity prior to April 12, 2004, I have also considered all medical opinions which are statements from acceptable medical sources, which reflect judgments about the nature and severity of the impairments and resulting limitations (20 CFR § 416.927 and Social Security Rulings 96-2p, 96-5p, 96-6p, and 06-3p).  This includes reports by the DDS evaluators and other treating, examining, and non-examining medical sources.

The record does not contain a valid opinion from a treating or examining physician indicating that the claimant was disabled prior to April 12, 2004 or had limitations greater than those determined in this decision.  Dr. Wu (Exhibits 3F and 16F) and Dr. Fogel (Exhibit 5F, pp. 2-4) did not give any work restrictions or limitations and did not offer an opinion regarding the ability to work.

With regard to physical residual functional capacity, the DDS evaluators determined that the claimant could perform light work with some occasional non-exertional limitations (Exhibit 9F).  Pursuant to Social Security Ruling 96-6p, I will adopt the limitations assessed by the DDS evaluators.  The determination is consistent with the objective medical evidence as a whole, particularly the consultative evaluation by Dr. Quint (Exhibit 4F) and Dr. Wu (Exhibit 16F, p. 1).  Dr. Quint opined that he could perform light work with only occasional postural and manipulative limitations, especially involving the left upper extremity (Exhibit 4F).  Dr. Wu opined that he could perform at least sedentary work (Exhibit 16F, p. 1).  These conclusions support the synthesis reached by the DDS evaluators.

I specifically discount the DSHS physical evaluation form completed by Dr. Haines (Exhibit 2F).  She opined that due to his left upper extremity condition left him severely limited and unable to return to work for 2 years.  However, she does not explain how his left upper extremity would severely limit his ability to stand, walk, or sit.  This opinion is not supported by the objective medical evidence.  Such DSHS opinions are likely accommodation opinions rather than opinions on residual functional capacity and the ability to work.  The form was not completed in an attempt to seek treatment for symptoms, but rather, in connection with an effort to generate evidence for the current appeal with the intent to help the claimant continue to receive welfare benefits and secure Social Security benefits.  Although such evidence is certainly legitimate and deserves due consideration, the context in which it was produced cannot be entirely ignored.  The opinion contained in this report also conflicts with the claimant's actual level of functioning as thoroughly discussed in this decision.

With regard to mental residual functional capacity, Counsel asked the medical expert at the hearing if he could find that the claimant suffered from depression back to the alleged onset date. Dr. [Richard] Johnson testified that his symptoms have existed about the same since the alleged onset date. However, I discount this statement because the objective medical evidence does not support this conclusion. Backdating this far is speculative and too much of a stretch given the lack of psychological evidence prior to April 2004.

On April 6, 2004, the DDS evaluators determined that the claimant only had mild functional limitations (Exhibit 8F). I will again adopt the limitations assessed by the DDS evaluators for the period of time prior to April 2004 (Social Security Ruling 96-6p). This determination is consistent with the psychological evidence. The only evidence prior to April 2004 was two evaluations performed in February 2004 (Exhibits 15F, pp. 23-32 and 17F, pp. 3-4) and one evaluation in March 2004 (Exhibit 7F). Although the VCC providers assessed a GAF score of 41 (Exhibit 15F, pp. 23-32), there is not objective medical evidence to support this serious symptoms or serious difficulties in social or occupational functioning. This is especially true given that only two days later the providers at Jail Mental Health assessed a GAF score of 65 (Exhibit 17F, pp. 3-4) and one month later Dr. Ramos assessed a GAF score of 70 (Exhibit 7F). Both of these GAF scores indicate that the claimant had only mild symptoms of some difficulty in social, occupational, or school functioning but was generally functioning pretty well and had some meaningful interpersonal relationships. Given the lack of psychological evidence prior to April 2004, I will adopt the two latter GAF scores. These conclusions support the synthesis reached by the DDS evaluators.

Tr. 26-28.

After reviewing the medical records, the ALJ's decision and the parties arguments on this issue, this court finds that the ALJ properly weighed the medical evidence. The ALJ properly considered and resolved the conflicting evidence. The ALJ provided "specific and legitimate reasons" to limit certain statements or opinions and his decision is properly supported by substantial evidence in the record, The ALJ relied on several sources of factual information to support his decision. Accordingly, the ALJ did not err.

### C. THE ALJ PROPERLY ASSESSED PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY (RFC)

"[R]esidual functional capacity" is "the maximum degree to which the individual retains the capacity for sustained performance of the physical- mental requirements of jobs." 20 C.F.R. § 404, Subpart P, App. 2 § 200.00(c). In evaluating whether a claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's "ability to work on a sustained basis." 20 C.F.R. § 404.1512(a). The regulations further specify: "When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis." Id. at § 404.1545(b).

Here, Plaintiff argues the ALJ's RFC assessment is defective because he failed to include all of Plaintiff's mental and physical limitations. This argument is premised on the assertion that the ALJ failed

to properly consider the medical evidence.  As discussed above, the undersigned does not find any error in the ALJ's analysis and consideration of the medical evidence.   Consequently, there is similarly no error in the ALJ's assessment of Plaintiff's RFC.

The ALJ found that prior to April 12, 2004, Plaintiff had the RFC for limited light work.  The ALJ found Plaintiff was unable to use his left dominant arm for work overhead or outstretched from his body but he could perform handle work close to his body and lift and carry occasionally less than 10 pounds. However, he could perform light level lifting and carrying with both hands, stand about 6 hours in an 8-hour workday, walk about 6 hours in an 8 -hour work day, and sit about 6 hours in an 8-hour workday. This assessment is supported by the medical evidence relied upon by the ALJ.  As noted above, the ALJ properly considered the medical evidence.  The ALJ's RFC finding accommodated all of Plaintiff's functional limitations found credible by the ALJ.

### D.    *THE ALJ PROPERLY RELIED ON TESTIMONY FROM A VOCATIONAL EXPERT TO CONCLUDE PLAINTIFF RETAINED THE ABILITY TO PERFORM CERTAIN TYPES OF WORK*

At step-five of the administrative process the burden of proof shifts to the Commissioner to produce evidence of other jobs existing in significant numbers in the national economy that Plaintiff could perform in light of his age, education, work experience, and residual functional capacity.  *See* Tackett v. Apfel, 180 F.3d 1094,1099 (9th Cir. 1999); Roberts v. Shalala, 66 F.3d 179, 184 (9th Civ. 1995). In Tackett, the court noted "there are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can perform: (a) by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, subpt. P, app. 2." Id.

Plaintiff argues the hypothetical posed by the ALJ to the vocational expert did not accurately reflect all of Plaintiff's limitations.  The argument is again premised on the allegations that the ALJ erred in assessing the medical evidence and Plaintiff's RFC.  As discussed above, the undersigned finds no error in the ALJ's consideration of the medical evidence or Plaintiff's RFC.

The ALJ posed a hypothetical to the vocational expert that accurately reflected Plaintiff's RFC. The vocational expert testified that a person similar to Plaintiff would be able to perform past work as a plastics worker supervisor.  Tr. 555.  Plaintiff's RFC and the Vocational Expert's testimony are consistent with medical evidence, discussed above, supporting the ALJ's conclusion that Plaintiff is capable of

returning to his past work.  Substantial evidence therefore supports the ALJ's reliance on the vocational

expert's testimony.  The ALJ properly relied on the vocational testimony in this case to find that Plaintiff

could perform past work at step-four of the administrative process, and he is therefore, not disabled prior

to April 12, 2004.

### E.  THE ALJ PROPERLY CONSIDERED PLAINTIFF'S SUBSTANCE ABUSE

The ALJ stated in his opinion, "Prior to April 12, 2004, the psychological picture record was

clouded so much with his polysubstance abuse that it was impossible to definitively determine whether

[Plaintiff] had disabling mental impairments notwithstanding the polysubstance abuse."  Plaintiff argues

the ALJ misapplied the law regarding the effect of drug and alcohol abuse on awarding disability benefits

and that his findings regarding Plaintiff's substance abuse are contrary to the medical testimony in this

case.  The undersigned disagrees.  Plaintiff has not proven any disability prior to April 24, 2004, and thus,

materiality of Plaintiff's substance abuse is not an issue in this matter.  The ALJ comments about

Plaintiff's abuse of drugs are merely contextual support for his determination of an onset date.

On March 29, 1996, Congress enacted the "Contract with America Advancement Act of 1996,"

which amended various portions of the Social Security Act. Pub.L. No. 104-121, 110 Stat. 847 (1996).

Section 105(a)(1)(C) of the amendments, titled "Denial of Disability Benefits to Drug Addicts and

Alcoholics," provides:

> An individual shall not be considered to be disabled for purposes of this title if alcoholism
> or drug addiction would (but for this subparagraph) be a contributing factor material to the
> Commissioner's determination that the individual is disabled.

110 Stat. at 852 (1996) (amending 42 U.S.C. § 423(d)(2)).  In determining whether a claimant's

alcoholism or drug addiction is material under 42 U.S.C. § 423(d)(2)(C), the test is "whether an individual

would still be found disabled if she stopped using alcohol or drugs." 20 C.F.R. § 404.1535(b)(1); Sousa v.

Callahan, 143 F.3d 1240, 1245 (9th Cir.1998). **Materiality, however, only becomes an issue after the**

**individual proves that he cannot perform any substantial gainful activity considering all his**

**impairments including drugs and alcohol.**  Therefore, the ALJ first determines whether plaintiffs

impairments, including his or her use of illicit drugs and/or alcohol, are disabling, and then determines

whether plaintiffs impairments, absent the effects of drugs and alcohol, are disabling.  Plaintiff has the

burden of proving his alcoholism or drug abuse is not material to the finding of disability.  Ball v.

1  Massanari, 254 F.3d 817, 821 (9th Cir. 2001); Brown v. Apfel, 192 F.3d 492, 497-99 (5th Cir. 1999);

2  Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir. 2000).

3      Here, the ALJ properly considered the evidence of Plaintiff's substance abuse, which pervades the

4  medical record, in the context of the disability onset date, April 12, 2004.  Tr. 28-29.  As discussed

5  above, the ALJ found insufficient evidence in the record to support Plaintiff's allegations of a mental

6  limitation prior to April 12, 2004.  Likewise, the ALJ found Plaintiff unable to prove any disability on or

7  before December 31, 1997, and in so doing, the ALJ explained that Plaitniff's substance abuse "clouded"

8  the issue of his mental limitations prior to April 12, 2004.  Significantly, the ALJ relied on ARNP

9  Kabisch's report as the turning point in Plaintiff's disability, and this report reflected Plaintiff had only

10 recently been clean and sober.  Plaintiff reported he used illegal drugs on a daily basis for about 37 years.

11 Tr. 248.  At the time of the report he was in a court ordered chemical dependency treatment program. Tr.

12 248.  Prior to this time, the ALJ did not err in finding or commenting that Plaintiff's drug and substance

13 abuse may have significantly effected his mental health limitations.  Significantly, the ALJ properly relied

14 on the available medical evidence to conclude Plaintiff had not proven any disability prior to April 12,

15 2004, and that Plaintiff retained the ability to perform past work up until that time.  Plaintiff has not

16 proved otherwise, and thus, materiality of Plaintiff's substance abuse was not a substantive issue.

17                                CONCLUSION

18     Based on the foregoing discussion, the Court should affirm the administrations decision to deny

19 plaintiff's applications for social security benefits.

20     Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the

21 parties shall have ten (10) days from service of this Report to file written objections. *See also*

22 Fed.R.Civ.P. 6.  Failure to file objections will result in a waiver of those objections for purposes of

23 appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the

24 clerk is directed to set the matter for consideration on **January 16, 2009**, as noted in the caption.

25     DATED this 5th day of January, 2009.

26                          */s/ J. Kelley Arnold*
                           J. Kelley Arnold
27                          U.S. Magistrate Judge

28

REPORT AND RECOMMENDATION
Page - 10